No. 13-1540

# In the United States Court of Appeals for the Tenth Circuit

LITTLE SISTERS OF THE POOR HOME FOR THE AGED, DENVER, COLORADO, a Colorado non-profit corporation, LITTLE SISTERS OF THE POOR, BALTIMORE, INC., a Maryland non-profit corporation, CHRISTIAN BROTHERS SERVICES, a New Mexico non-profit corporation, and CHRISTIAN BROTHERS EMPLOYEE BENEFIT TRUST,

*Appellants—Movants,*

v.

KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, THOMAS PEREZ, Secretary of the United States Department of Labor, UNITED STATES DEPARTMENT OF LABOR, JACOB J. LEW, Secretary of the United States Department of the Treasury, and UNITED STATES DEPARTMENT OF THE TREASURY,

*Appellees—Respondents.*

### On Appeal from the United States District Court for the District of Colorado

### APPELLANTS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL—RELIEF REQUESTED BY DECEMBER 31, 2013

Mark L. Rienzi
Daniel Blomberg
Adèle Auxier Keim
THE BECKET FUND FOR RELIGIOUS LIBERTY
3000 K Street, N.W., Suite 220
Washington, D.C. 20007
(202) 349-7209
mrienzi@becketfund.org

Carl C. Scherz
Seth Roberts
Locke Lord LLP
2200 ROSS AVENUE, SUITE 2200
Dallas, Texas 75201
(214) 740-8583

Kevin C. Walsh
Univ. of Richmond Law School
28 Westhampton Way
Richmond, VA
(804) 287-6018

*Attorneys for Appellants*

December 28, 2013

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellants each represent that they do not have any parent entities and do not issue stock.

Respectfully submitted,

 /s/ *Mark Rienzi*
Mark Rienzi
THE BECKET FUND FOR RELIGIOUS LIBERTY
3000 K Street, N.W., Suite 220
Washington, D.C. 20007
(202) 349-7209
mrienzi@becketfund.org
*Attorney for Appellant*

Dated: December 28, 2013

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS ..................................................................................ii

TABLE OF AUTHORITIES ............................................................................iii

INTRODUCTION .......................................................................................... 1

BACKGROUND ............................................................................................. 3

PROCEDURAL HISTORY ............................................................................. 5

ARGUMENT .................................................................................................. 6

    I.      Appellants are substantially likely to succeed on the merits of their RFRA claim ................................................................................... 6

        A.    The Mandate imposes a substantial burden because it puts substantial pressure on appellants to violate their beliefs by either providing coverage or signing and delivering the Form...................................... 8

        B.    The trial court erred by ignoring or revising Appellants' religious obligation to refrain from signing and delivering the forms.......................... 12

        C.    Other courts have properly granted preliminary injunctions in similar circumstances. ......................................................................... 16

    II.     The Remaining Preliminary Injunction Factors ................................. 18

CONCLUSION ............................................................................................. 20

CERTIFICATE OF COMPLIANCE ............................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Armstrong v. Sebelius*,
    2013 WL 5213640 (D. Colo. 2013) ............................................................. 18

*Autocam Corp. v. Sebelius*,
    730 F.3d 618 (6th Cir. 2013) ...................................................................... 7

*Bick Holdings Inc. v. Sebelius*,
    No. 4:13-cv-00462 (E.D. Mo. April 1, 2013) ............................................. 19

*Catholic Diocese of Nashville v. Sebelius*,
    No. 3:13-cv-1303 (M.D. Tenn. Dec. 26, 2013) ........................................... 7

*Conestoga Wood Specialties Corp. v. Sebelius*,
    724 F.3d 377 (3d Cir. 2013), *cert. granted* 134 S. Ct. 678 (2013) ............... 7

*Diocese of Fort Wayne-S. Bend, Inc. v. Sebelius*,
    No. 1:12-cv-159 (N.D. Ind. Dec. 27, 2013) ................................................ 7

*E. Tex. Baptist Univ. v. Sebelius*,
    No. 4:12-cv-03009 (S.D. Tex. Sept. 20, 2013) ................................ 4, 7, 16, 18

*Geneva College v. Sebelius,*
    No. 12-cv-00207 (W.D. Pa. Dec. 23 2013) ................................................. 7

*Gilardi v. U.S. Dep't of Health & Human Srvs.*,
    733 F.3d 1208 (D.C. Cir. 2013) ........................................................ 7, 10, 16

*Grace Schools v. Sebelius,*
    No. 3:12-CV-459 (N.D. Ind. Dec. 27, 2013) ............................................. 7

*Hobby Lobby Stores, Inc. v. Sebelius*,
    No. 12-6294, 2012 WL 6930302 (10th Cir. Dec. 20, 2012)......................... 6

*Hobby Lobby v. Sebelius*,
    723 F.3d 1114 (10th Cir. 2013) ...........................................................*passim*

*Homans v. City of Albuquerque*,
    264 F.3d 1240 (10th Cir. 2001) ................................................................. 6

*Korte v. Sebelius*,
    735 F.3d 654 (7th Cir. 2013) ............................................................... 7, 16

*Legatus v. Sebelius,*
　　No. 12-cv-12061-RHC-MJH (E.D. Mich. Dec. 20, 2013) ............................................ 7

*Michigan Catholic Conference v. Sebelius*,
　　No. 1:13-cv-1247 (W.D. Mich. Dec. 27, 2013)............................................................ 7

*Newland v. Sebelius,*
　　2013 WL 5481997 (10th Cir. 2013) ......................................................................... 19

*Newland v. Sebelius,*
　　881 F. Supp. 2d 1287 (D. Colo. 2012) ..................................................................... 19

*O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*,
　　389 F.3d 973 (10th Cir. 2004) (en banc) ................................................................. 19

*Persico v. Sebelius*,
　　No. 13-cv-00303, 2013 WL 6118696 (W.D. Pa. Nov. 21, 2013) .................................. 7

*Priests for Life v. U.S. Dep't of Health & Human Servs.*,
　　No. 13-cv-1261, 2013 WL 6672400 (D.D.C. Dec. 19, 2013) ...................................... 7

*Reaching Souls Int'l, Inc. v. Sebelius*,
　　No. 13-cv-1092, 2013 WL 6804259 (W.D. Okla.) ................................2, 7, 9, 11, 16-18

*Roman Catholic Archbishop of Washington v. Sebelius,*
　　No. 13-cv-1441 (D.D.C. Dec. 20, 2013)..................................................................... 7

*Roman Catholic Archdiocese of New York v. Sebelius*,
　　No. 12-cv-2542, 2013 WL 6579764 (E.D.N.Y. Dec. 16, 2013)................. 4, 5, 7, 16, 17

*Southern Nazarene University v. Sebelius*,
　　No. CIV-13-1015-F, 2013 WL 6804265 (W.D. Okla. Dec. 23, 2013) .......2, 7, 16, 17, 18

*Tyndale House Publishers v. Sebelius*,
　　No. 13-5018 (D.C. Cir. May 3, 2013)....................................................................... 19

*University of Notre Dame v. Sebelius,*
　　No. 13-cv-01276 (N.D. Ind. Dec. 20. 2013) .............................................................. 7

*Zubik v. Sebelius*,
　　No. 13-cv-01459, 2013 WL 6118696 (W.D. Pa. Nov. 21, 2013) ........................7, 15, 16

CONSTITUTIONAL PROVISIONS

First Amendment .................................................................................... 5, 6, 7, 18

iv

Fourteenth Amendment ............................................................................................. 5

**STATUTES AND RULES**

Fed. R. App. P. 8 ................................................................................................... 5, 6

78 Fed. Reg. 39870 (July 2, 2013) ..................................................................*passim*

26 C.F.R. §54.9815-2713A ....................................................................... 4, 5, 11, 15

29 C.F.R. § 2510.3-16 .................................................................................................. 15

29 C.F.R. § 2590.715–2713A ................................................................................ 4, 5, 10

45 C.F.R. § 147.131(b) ................................................................................................ 4

45 C.F.R. § 147.131(c)(2)(i)(B) .................................................................................. 10

45 C.F.R. § 156.50 ....................................................................................................12

26 U.S.C. § 4980D(b)(1) and 4980H(c)(1) .......................................................... 3

28 U.S.C. § 1291 (a) ................................................................................................. 5

28 U.S.C. §§ 1331 and 1361 ....................................................................................... 5

28 U.S.C. §§ 2201 and 2202 ....................................................................................... 5

42 U.S.C. § 300gg-13(a) .......................................................................................... 3

42 U.S.C. § 2000bb *et seq*. (RFRA) .............................................................*passim*


**OTHER AUTHORITIES**

Kathleen Sebelius, Remarks at The Forum at Harvard School of Public Health
(Apr. 8, 2013), *available at* http://theforum.sph.harvard.edu/events/ .......................... 4

**INTRODUCTION**

Appellants Little Sisters of the Poor Home for the Aged, Denver, Colorado, and Little Sisters of the Poor, Baltimore, are part of an international order of Catholic nuns whose religious faith inspires them to spend their lives serving the sick and elderly poor. That same faith also precludes them from participating in the federal government's efforts to subsidize and promote the use of sterilization, contraceptives, and abortifacients (the "Mandate"). As a matter of religious exercise, the Little Sisters exclude such items from the health plan they provide for their employees, Appellant Christian Brothers Employee Benefit Trust ("Trust"), which is administered by Appellant Christian Brothers Services.

Starting on January 1, 2014—four days from now—the federal government will impose massive penalties on the Little Sisters for this religious exercise unless they participate in the Mandate. Late Friday afternoon, the trial court denied Appellants' request for a preliminary injunction on the theory that the Little Sisters must fulfill their required role in the Mandate's scheme because the government "admitted that [it] lack[s] regulatory authority at this time" to translate their forced participation into the immediate provision of objectionable drugs and devices. But Appellants' religion forbids them from *any* participation, including participation in reliance on the temporary (and litigation-inspired) willingness of the government to delay some of the religiously prohibited *results* of the coerced participation.

The trial court's ruling leaves Appellants facing the precise predicament religious freedom laws are designed to prevent. By midnight on New Year's Eve, Mother

1

Provincial Loraine Marie Maguire must decide whether the Little Sisters should adhere to their religious conviction that they cannot participate in the Mandate, or whether they should sacrifice that religious belief to spare their ministry from the government's crushing fines. And Brother Michael Quirk must decide whether the Christian Brothers entities will ignore the express requirements of the Code of Federal Regulations and risk millions in fines for participating employers in order to continue providing benefits consistent with their Catholic faith.

As this Court explained in *Hobby Lobby v. Sebelius*, 723 F.3d 1114, 1137-1145 (10th Cir. 2013) (en banc), *cert. granted* 134 S. Ct. 678 (2013), this kind of forced choice presents a substantial burden on religion. The required analysis is straightforward: "Our only task is to determine whether the claimant's belief is sincere and if so, whether the government has applied substantial pressure on the claimant to violate that belief." *Id.* at 1137. Indeed, every other plaintiff in this circuit to seek a preliminary injunction against the Mandate has received one, including two other church-plan plaintiffs. *See, e.g., Reaching Souls Int'l, Inc. v. Sebelius,* No. 5:13-cv- 1092-D, 2013 WL 6804259 (W.D. Okla. Dec. 20, 2013); *Southern Nazarene University v. Sebelius,* No. 13-cv-1015-F, 2013 WL 6804265 (W.D. Okla. Dec. 23, 2013).

The trial court erred in denying Appellants the same relief and contradicted *Hobby Lobby* in the process. The court was wrong to rely on the government's claim that its system does not work "at this time" because that temporary assurance does not change Appellants' religious beliefs—they are prohibited by their religion from participating

2

even in a not-quite-finished contraceptive-delivery system. Under *Hobby Lobby*, that religious belief, combined with the large fines Appellants face for following it, create a substantial burden. The government's new position is relevant chiefly to highlight the fact that the government and the public will suffer no harm whatsoever from a preliminary injunction merely allowing Appellants to continue their lawsuit without being crushed with fines before they can reach the finish line. Appellants urgently seek that relief here.

## BACKGROUND

This case presents a challenge to the application of the Mandate described in *Hobby Lobby*, 723 F.3d at 1137-1145, to non-profit religious entities. As in *Hobby Lobby*, the Appellants are subject to requirements under the Affordable Care Act ("ACA") that they provide coverage for "preventative care" in their employee group health plan. 42 U.S.C. § 300gg-13(a), including coverage for all FDA-approved contraceptive methods, sterilization procedures, and patient education and counseling, including "emergency contraception" such as Plan B (the "morning-after" pill) and ella (the "week-after" pill). Dkt. 1-2; Dkt. 1-3 at 11-12. And as in *Hobby Lobby*, failure to comply with this requirement would subject Appellants—but not grandfathered entities, small employees, or churches, which collectively provide health insurance for tens of millions of Americans—to large financial penalties. *Hobby Lobby*, 723 F.3d at 1123-25 (discussing Mandate's exemptions and citing 26 U.S.C. § 4980D(b)(1) and 4980H(c)(1)).

As "non-exempt" religious non-profits, Appellants have been offered an alternative way to "comply" with this requirement: they can sign and deliver a form authorizing and instructing a third-party administrator ("TPA") to deliver the drugs in their place.[1] Appellants have religious objections to signing and delivering this form to any TPA, even to (indeed, particularly to) one who shares their religious beliefs. Mother Loraine Decl., Dkt. 15-1 at ¶¶ 39, 48-50; Suppl. Mother Loraine Decl., Dkt. 37-1 at ¶¶ 6-9. As the Court below rightly noted, these religious objections are not in dispute. Op. at 17, 20.

After Appellants filed their motion for a preliminary injunction, and for the first time in any of the lawsuits against the Mandate, the Appellees (hereafter "the Departments") argued that they can force Appellants to participate in their regulatory scheme because "at this time" they "lack regulatory authority" to enforce part of the Mandate against TPAs that serve ERISA-exempt "church benefit plans" like the Trust. Defs' PI Opp., Dkt. 29 at 2-7.[2] The Departments "continue to consider potential options to fully and

---

[1]  *See* 78 Fed. Reg. at 39874; 45 C.F.R. § 147.131(b). In order to "comply" in this alternative way, "non-exempt" entities must provide the certification to their insurer or TPA before "the beginning of the first plan year" beginning on or after January 1, 2014. 78 Fed. Reg. at 39875; *see also* 26 C.F.R. §54.9815-2713A(a); 29 C.F.R. § 2590.715-2713A(a).

[2]  This position is new. Before this case was filed, the Departments were publicly asserting that they *could* make their scheme work against church plan participants, such as Houston Baptist University. *See* Dkt. 79, Def's Mot. to Dismiss, *E. Tex. Baptist Univ. v. Sebelius*, No. 4:12-cv-03009 (S.D. Tex. Sept. 20, 2013); Kathleen Sebelius, Remarks at The Forum at Harvard School of Public Health (Apr. 8, 2013), *available at* http://theforum.sph.harvard.edu/events/ conversation-kathleen-sebelius (starting at 51:20) (last visited Nov. 15, 2013) ("But Catholic hospitals, Catholic universities, other religious entities *will be providing coverage* to their employees . . . . [E]very employee who doesn't work directly for a church or a diocese *will be included* in the benefit package.") (Complaint ¶ 97). As the Eastern District of New York observed, "[i]t is unclear how

4

appropriately extend the consumer protections provided by the regulations to self-insured church plans." *Id.* at 2. And they continue to insist that the Little Sisters must either provide objectionable coverage, sign and deliver the Form, or be penalized. *See* 26 C.F.R. § 54.9815–2713A; 29 C.F.R. § 2590.715–2713A. The Departments intend to enforce these requirements, which place enormous pressure on Appellants to violate their religious beliefs and compromise their religious missions. Brother Quirk Decl., Dkt. 15-2 ¶¶ 43-53; Dkt. 37-1 ¶¶ 8-9; Suppl. Br. Quirk Decl., Dkt. 37-2 ¶¶ 8-11.

## PROCEDURAL HISTORY

Appellants filed their complaint on September 24, 2013, challenging the mandate under the Religious Freedom Restoration Act (RFRA), the First Amendment, the Fourteenth Amendment, and the Administrative Procedure Act. Dkt. 1. On October 24, Appellants moved for a preliminary injunction and expedited consideration. Dkt. 15. Based solely on legal conclusions, and without disputing any of Appellants' facts, the court denied the preliminary injunction on December 27, 2013. Dkt. 52. Appellants filed their notice of appeal that same day.[3]

---

citizens like plaintiffs and their third party administrators are supposed to know what the law requires of them if the Government itself is unsure. After almost 18 months of litigation, the Departments now effectively concede that the regulatory tale told by the Government was a *non-sequitur.*" *Roman Catholic Archdiocese of New York v. Sebelius*, No. 12-cv-2542, 2013 WL 6579764, *6 (E.D.N.Y. Dec. 16, 2013) (granting summary judgment for Catholic non-profits insured through church plans).

[3] The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1361, and had authority to issue an injunction under 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 2000bb *et seq*. This Court has jurisdiction over this appeal under 28 U.S.C. § 1292 (a). Counsel for the government opposes this motion.

**ARGUMENT**

Appellants satisfy the requirements for an injunction pending appeal under Fed. R. App. P. 8[4] because (1) they have a substantial likelihood of success on appeal; (2) they face irreparable harm if an injunction is not granted; (3) the opposing parties face no harm if the injunction is granted; and (4) there is no risk of harm to the public interest. The district court made numerous errors in denying preliminary relief. Accordingly, for the reasons set forth more fully below, this Court should grant Appellants' motion for an injunction pending appeal.

**I.     Appellants are substantially likely to succeed on the merits of their RFRA claim**

Under the Religious Freedom Restoration Act ("RFRA"), the federal government "may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental

---

[4]   Appellants have simultaneously moved for an emergency stay pending appeal in this court and before the district court. Although a party "must ordinarily move first" for such relief "in the district court," *see* Fed. R. App. P. 8 (a)(1)(C), that requirement is waived where going to the district court "would be impracticable," *see* Fed. R. App. P. 8(a)(2)(A)(i). Considering the immediacy of the government's crippling penalties and religious exercise rights at stake, waiting for a ruling from the district court is impracticable. *See Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001) (excusing requirement where First Amendment rights were at stake, harm was just weeks away, and "the district court would essentially make the same inquiry it made before"); *Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-6294, 2012 WL 6930302, at *1-3 (10th Cir. Dec. 20, 2012)(considering motion for injunction pending appeal filed six weeks before an impending deadline); *see also* Fed. R. App. P. 8 (a)(2).

interest; and (2) is the least restrictive means of furthering that compelling governmental interest."[5] 42 U.S.C. §2000bb-1(b).

*Hobby Lobby* provides the required framework for RFRA analysis. First, a court must "identify the religious belief" at issue. 723 F.3d at 1140. Second, it must "determine whether this belief is sincere." *Id*. Third, the court must determine "whether the government places substantial pressure on the religious believer." *Id*. Finally, if there is

---

[5] Three out of five federal courts of appeals, including this Court, have concluded that the Mandate burdens the religious exercise of for-profit corporations. *Hobby Lobby*, 723 F.3d at 1137-1145, (holding that the Mandate substantially burdened the religious exercise of a for-profit corporation); *see also Gilardi v. U.S. Dep't of Health & Human Srvs*., 733 F.3d 1208 (D.C. Cir. 2013) (same); *Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013) (same). *But see Conestoga Wood Specialties Corp. v. Sebelius*, 724 F.3d 377 (3d Cir. 2013), *cert. granted* 134 S. Ct. 678 (2013); *Autocam Corp. v. Sebelius*, 730 F.3d 618 (6th Cir. 2013). No court of appeals has yet ruled on the Departments' "accommodation," but in eleven of sixteen cases where lower courts have reached the issue, those courts have held that the government's scheme violates RFRA or the First Amendment. *See Southern Nazarene University,* 2013 WL 6804265; *Reaching Souls Int'l, Inc.,* 2013 WL 6804259; *East Texas Baptist Univ. v. Sebelius*, No. H-12-3009 (S.D. Tex. Dec. 27, 2013); *Grace Schools v. Sebelius,* No. 3:12-CV-459 (N.D. Ind. Dec. 27, 2013); *Diocese of Fort Wayne-S. Bend, Inc. v. Sebelius*, No. 1:12-cv-159 (N.D. Ind. Dec. 27, 2013); *Geneva College v. Sebelius,* No. 12-cv-00207 (W.D. Pa. Dec. 23 2013); *Legatus v. Sebelius,* No. 12-cv-12061-RHC-MJH (E.D. Mich. Dec. 20, 2013); *Roman Catholic Archbishop of Washington v. Sebelius,* No. 13-cv-1441 (D.D.C. Dec. 20, 2013) (enjoining mandate on free speech grounds); *Roman Catholic Archdiocese of New York*, 2013 WL 6579764; *Persico v. Sebelius*, No. 13-cv-00303, 2013 WL 6118696 (W.D. Pa. Nov. 21, 2013); *Zubik v. Sebelius*, No. 13-cv-01459, 2013 WL 6118696 (W.D. Pa. Nov. 21, 2013). *But see Michigan Catholic Conference v. Sebelius*, No. 1:13-cv-1247 (W.D. Mich. Dec. 27, 2013); *Catholic Diocese of Nashville v. Sebelius*, No. 3:13-cv-1303 (M.D. Tenn. Dec. 26, 2013), emergency motion for injunction filed Dec. 27, 2013, No. 13-6640 (6th Cir.); *University of Notre Dame v. Sebelius,* No. 13-cv-01276 (N.D. Ind. Dec. 20. 2013), emergency motion for injunction filed Dec. 23, 2013, No 13-3853 (7th Cir.); *Priests for Life v. U.S. Dep't of Health & Human Servs.*, No. 13-cv-1261, 2013 WL 6672400 (D.D.C. Dec. 19, 2013), emergency motion for injunction filed Dec. 20, 2013, No. 13-5368 (D.C. Cir.).

substantial pressure, the government action will be upheld only if it satisfies strict scrutiny—*i.e.*, the court concludes that forcing the religious believer to violate its own conscience is "'the least restrictive means of advancing a compelling interest.'" *Id.* at 1143 (citation omitted); 42 U.S.C. § 2000bb-1.

Below, the Departments effectively conceded every prong of this test except the "substantial pressure" prong. The Departments do not dispute the existence, religiosity, or sincerity of Appellants' religious beliefs. And the Departments admit that *Hobby Lobby* already rejected their strict scrutiny argument. Dkt. 29 at 10. Thus, the only part of the *Hobby Lobby* analysis that remains is whether the Mandate "places substantial pressure" on Appellants to violate their beliefs. 723 F.3d at 1140.

**A.    The Mandate imposes a substantial burden because it puts substantial pressure on appellants to violate their beliefs by either providing coverage or signing and delivering the Form.**

Government action substantially burdens a religious belief when it "requires participation in an activity prohibited by a sincerely held religious belief," "prevents participation in conduct motivated by a sincerely held religious belief," or "places substantial pressure on an adherent . . . to engage in conduct contrary to a sincerely held religious belief." *Id.* at 1138 (internal citation and quotation marks omitted). The Mandate does all of the above. Appellants have a sincere religious belief that their Catholic faith prohibits them from participating in the Mandate. Dkt. 15-1 ¶¶ 30-52; Dkt. 15-2 ¶¶ 27-34. They are forbidden by their Catholic faith from facilitating or promoting abortion, contraception, and sterilization. Dkt. 15-1 ¶¶ 44-52; Dkt. 15-2 ¶¶ 17-34.

8

Appellants cannot provide these services themselves, cannot authorize someone else to provide them, and cannot take actions that appear to participate in the Departments' delivery scheme. *Id.* Appellants' religious beliefs require them to avoid participating in any system that could involve the provision of such services. *Id.* These religious beliefs are deeply held, sincere, and well-documented parts of Appellants' Catholic faith. *See, e.g.*, Dkt. 15-1 ¶¶ 31-38; Dkt. 15-2 ¶¶ 17-34. They are not disputed here.

Notably, Appellants' religious obligation to avoid participating in the Departments' scheme remains unchanged despite the Departments' new claim that part of the system is not yet fully operational with respect to Appellants. Dkt. 37-1 ¶¶ 6-9; Dkt. 37-2 ¶¶ 8-9. That is, *regardless* of the Departments' current position, Appellants are religiously prohibited from doing what the law requires of them: providing the coverage or signing and delivering the forms. Dkt. 37-1 ¶¶ 6-9; Dkt. 37-2 ¶¶ 8-9. That refusal to participate in this system is particularly reasonable because the Departments admit that, once a third-party administrator receives the Form from the Little Sisters, nothing stops the administrator from using the form to seek federal reimbursement plus at least "a 10% bump for their margin as well" for any contraceptives they provide to the Little Sisters' employees. Dkt. 51-1 at 5-6 (Dec. 16, 2013 Hrn'g Tr. at 96:15-18, *Reaching Souls Int'l, Inc. v. Sebelius*, No. 13-cv-1092 (W.D. Okla.)).

Here, as in *Hobby Lobby*, Appellants engage in a religious exercise—refusing to facilitate certain healthcare services. In particular, Appellants cannot include these services in their health plans, cannot provide designations or certifications that will cause

9

others to provide them, and importantly cannot take actions that objectively appear to do either because it would lead others to do evil or think that Appellants condone evil. Violating Catholic teaching poses a grave risk in their interactions with supporters, those whom Appellants serve, and others who share their beliefs; and violates their obligation to engage in conduct and associations that advocate for and reflect their Catholic beliefs, particularly as it relates to protecting human dignity and human life. Dkt. 15-1 ¶ 36-37, 39, 46-50; Dkt. 15-2 ¶ 28-34; Dkt. 37-2 ¶ 8; Dkt. 37-1 ¶ 9. Yet the Mandate threatens Appellants with enormous financial losses unless and until they cease this religious exercise. *See, e.g.,* Dkt 15-1¶ 56 (daily fines of $6,700 and annual fines of nearly $2.5 million for one Little Sisters home); Dkt. 15-2 ¶ 53 (estimated loss of $130 million in plan contributions to Christian Brothers Trust). Under *Hobby Lobby*, the Mandate thereby imposes a substantial burden on Appellants' religious exercise because it imposes "substantial pressure on the religious believer" to forego the exercise. 723 F.3d at 1141 (noting that Mandate put Appellants to a "Hobson's choice" of violating their beliefs or facing heavy consequences, which "established a substantial burden as a matter of law."); *see also Gilardi v. U.S. Dep't of Health & Human Srvs.*, 733 F.3d 1208, 1217 (D.C. Cir. 2013) (the Mandate burdens objectors by "pressur[ing] [them] to choose between violating their religious beliefs in managing their selected plan or paying onerous penalties").

The Departments seek to avoid the outcome dictated by *Hobby Lobby* by (a) claiming that the Mandate does not actually work, and (b) claiming that, in light of the Mandate's

current problems, Appellants are not burdened by forced participation in the Mandate. Both arguments fail.

First, regardless of the Departments' litigation position, it is clear that under the law as written, the act of signing and delivering the Form is fraught with important consequences Appellants are religiously required to avoid. According to the government, the Form:

- Provides TPAs with the "legal authority" they need to provide contraceptives to the employees of organizations like the Little Sisters. *See* 78 Fed. Reg. at 39880.

- Authorizes the Little Sisters' TPAs to offer contraceptives to "participants and beneficiaries" in the Little Sisters' health plan, "so long as they remain enrolled in the plan." 78 Fed. Reg. at 39893; *see* 45 C.F.R. § 147.131(c)(2)(i)(B); 26 C.F.R. § 54.9815– 2713A; 29 C.F.R. § 2590.715–2713A.

- Designates each TPA that receives the Form a "plan administrator . . . solely for the purpose of providing payments for contraceptive services for participants and beneficiaries." 78 Fed. Reg. at 39879.

- Notifies each TPA of its legal "obligations" to offer contraceptive coverage by citing regulations issued under both ERISA and the Internal Revenue Code. *See* Dkt. 37-3 at 2 (citing 26 C.F.R. §54.9815-2713A); *see also* 78 Fed. Reg. at 39879.

- Incorporates these new instructions into the Little Sisters' existing health plan. Dkt. 37-3 at 2 ("This certification is an instrument under which the plan is operated.").

11

The Little Sisters must deliver the Form to "all" third party TPAs with which they or the Trust have contracted, not just those who share their religious values. 78 Fed. Reg. at 39879. Once a TPA receives the Form, it may use it to seek federal reimbursement plus an allowance for administrative costs and margin equal to at least 10% of the cost for any contraceptives that it provides to the Little Sisters' employees. 45 § C.F.R. 156.50. In this sense, the "accommodation" scheme includes both a "stick"—the legal obligation to provide contraceptives—and a "carrot"—the promise of reimbursement. *Id.* Both the "carrot" and the "stick" rely on the Form.[6] The Departments adopted this Form-dependent system because they believed that it "best ensure[d] that plan participants and beneficiaries receive contraceptive coverage without cost sharing." 78 Fed. Reg. at 39880.[7] It is undisputed that Appellants' religious beliefs prohibit them from involvement in this process.  Op. at 17, 20; *see also* Dkt. 37-1 ¶¶ 6-9; Dkt. 37-2 ¶¶ 8-9.

**B.    The trial court erred by ignoring or revising Appellants' religious obligation to refrain from signing and delivering the forms.**

The opinion below incorrectly fails to recognize that the government's litigation position does not change Appellants' religious objections to participating in this system.

---

[6]  Dkt. 51-1 at 10 (Counsel for the government in another church plan case on 12/16: "I will concede that the TPA . . . if they receive the certification, they are eligible for reimbursement. They would not otherwise be eligible.").

[7]  The Little Sisters object to providing the form to any TPA, including one who shares their religious beliefs.  Dkt. 15-1 ¶¶ 39, 48-50; Dkt. 37-1 ¶¶ 6-9. The trial court cites no authority for the notion that the government can force the Little Sisters to place their religious obligations in the hands of Christian Brothers an pray that it stands firm. In any case, there is one possible TPA who does not share the Little Sisters' religious beliefs: Express Scripts, Inc.  The record below established that Express Scripts might, in fact, decide to act on such certifications, Br. Quirk Second Suppl. Decl., Dkt. 42-4 ¶¶ 2-3, which provides additional reason for the Little Sisters to refrain from providing the Form.

Although the lower court's opinion acknowledges that Appellants will suffer "substantial fines" if they do not execute and submit the Form to which they object, Op. at 14-15, 32, it fails to recognize these substantial fines as a substantial burden upon Appellants as required by *Hobby Lobby* and as found by other courts.[8] It also fails to recognize Appellants' religious beliefs that they cannot sign and submit the Form, regardless of the government's claimed current difficulty in making the Form effective.

The court recognized that it "cannot look behind [Appellants'] statements about what offends their religious beliefs" and "cannot question whether a particular act or conduct, allegedly caused by a challenged regulation, violates a party's religious belief" Op. at 21. Yet that is precisely what the decision below does: it repeatedly explains why the court thinks an act that Appellants say violates their religion (signing and delivering the Form to participate in the accommodation) really does not violate their religion. *See, e.g.,* Op. at 28 ("In her Supplemental Declaration, Mother Maguire states that, because of their religious beliefs, Little Sisters cannot "[s]ign the self-certification form that on its face authorizes another organization to deliver contraceptives, sterilization, and abortifacients to the Little Sisters' employees and other beneficiaries." **The Court finds that this**

---

[8]    Ironically, the district court noted the false choice in *Hobby Lobby* between fines ranging between $26 million and $475 million dollars or the violation of religious beliefs. Yet the district court declined to relieve Appellants from this same Hobson's choice declaring that Appellants could "avoid the fines levied upon non-compliance with the Mandate by signing the self-certification form and providing it to Christian Brothers Services, their third party administrator." Op. at 18. In other words, Appellants must navigate this Hobson's choice by choosing to violate their religious beliefs by signing and submitting the Form and participate in this coverage scheme. That is precisely the type of forced choice RFRA is designed to prevent and *Hobby Lobby* recognizes as a substantial burden.

**contention reads too much into the language of the Form**, which requires only that the individual signing it certify that her organization opposes providing contraceptive coverage and otherwise qualifies as an eligible organization.") (emphasis added, internal citations omitted); Op. at 23 ("Because the Final Rules do not require any of the Plaintiffs to provide, participate in, contract or arrange for, or otherwise facilitate the provision of contraceptives, sterilization, or abortifacients, the Court concludes that the Final Rules do not substantially burden Plaintiffs' religious beliefs which forbid such actions."); Op. at 31 ("'Thus, Plaintiffs' contention that **their religious beliefs** are substantially burdened because the Form executed by the Little Sisters' could be relied on by another organization to provide contraceptive services to Little Sisters' employees is **pure conjecture,** one **that ignores the factual and legal realities** of this case.") (emphasis added).

Executing and submitting the Forms violates Appellants religious beliefs. Appellants believe it would be sinful for them to intentionally facilitate the provision of contraceptives, abortifacients, sterilizations, and related education and counseling, for contraceptive purposes, as is required by the Mandate. Dkt. 15-1 ¶ 42; Dkt. 15-2 ¶¶ 27-34.  They believe that they must avoid publicly engaging in conduct that may lead others to do evil or think that Appellants condone evil; that publicly participating in conduct that violates Catholic teaching also poses a grave risk to Appellants in their associations with supporters, those who Appellants serve, and others who share their beliefs; and that they must engage in conduct and associations that advocate for and reflect their Catholic

14

beliefs.  Dkt. 15-1 ¶ 36-37, 39; Dkt. 15-2 ¶ 28-30; Dkt. 37-2 ¶ 8; Dkt. 37-1 ¶ 9. Being

required to execute, submit, and facilitate the Form violates all of those beliefs, even after

the government changed its position. *Id*. Furthermore, Appellants have substantial fear

over whether Express Scripts, Inc. (ESI)—an entity to whom they might have to give

their forms—will provide contraceptive coverage if it receives a Form from Appellants,

an issue the court below failed to address entirely.  Dkt. 42-2 ¶ 2.

Ultimately, the trial court's opinion amounts to an argument about why signing the

forms *should* not violate Appellants' religion.   The lower court clearly believed that

Appellants *should* be comfortable signing the Form in reliance on Defendants' new

litigation position and the lower court's construction of the Mandate.[9] However, the

questions of moral complicity in this case are religious, not legal. As *Hobby Lobby*

instructed:

> [I]t is not for secular courts to rewrite the religious complaint of a faithful
> adherent, or to decide whether a religious teaching about complicity
> imposes "too much" moral disapproval on those only "indirectly" assisting
> wrongful conduct. Whether an act of complicity is or isn't "too attenuated"

---

[9]    At the same time, however, the district court independently acknowledged Appellants own concerns that "the Final Rules could be construed to require an eligible organization to contract with a third party administrator that is willing to act as an ERISA plan administrator and claim administrator and take on all of the obligations set forth in 29 C.F.R. § 2510.3-16 and 26 C.F.R. § 54.9815-2713A", Op. at 25, and that "the regulations implementing the ACA are in flux, and that Congress may, at some point in the future, grant Defendants some authority outside of ERISA to enforce the Mandate, and/or promulgate new regulations that apply to church plans.  Indeed, there is a story on the news almost daily about changes being made to the ACA regulations." Op. at 33. It is, of course, a perfectly valid *religious* belief for a party to believe they are *religiously* required to refrain from signing and releasing authorization forms in such an uncertain system.

15

from the underlying wrong is sometimes itself a matter of faith we must respect.

723 F.3d at 1153-54; *Gilardi*, 733 F.3d at 1215 ("[I]t is not for courts to decide [what] severs [a religious objector's] moral responsibility") (internal citation omitted); *Korte v. Sebelius*, 735 F.3d 654, 685 (7th Cir. 2013) (rejecting Defendants' "'attenuation' argument" because it asks whether "th[e] [Mandated] coverage impermissibly assist[s] the commission of a wrongful act in violation of the moral doctrines of the Catholic Church," a question which "[n]o civil authority can decide"); *Zubik*, 2013 WL 6118696, at \*14 ("Completion of the self-certification form would be akin to cooperating with/facilitating 'an evil' and would place the Diocese 'in a position of providing scandal' because 'it makes it appear as though [the Diocese] is cooperating with an objectionable practice that goes against [Church] teaching.'").

**C.    Other courts have properly granted preliminary injunctions in similar circumstances.**

Most lower courts to consider the impact of the Mandate on non-profits generally, and on church plan participants specifically, have found that it *does* impose a substantial burden. *See* footnote 5, *supra*.[10] The great weight of authority explains why the trial court's analysis was simply wrong.[11]

---

[10] The *Reaching Souls*, *E. Tex. Baptist Univ., Archdiocese of New York, Archbishop of Washington,* and *Southern Nazarene* cases cited in footnote 5 all involved church plan plaintiffs (although *Southern Nazarene* does not address the issue separately). Only *Archbishop of Washington* denied relief.

[11] On December 18, the trial court instructed the parties not to advise it as to supplemental authority from other courts.  Dkt. 49.

For example, several other courts to consider this very issue have rejected the government's argument as misunderstanding or misstating the religious objection. "Plaintiffs' religious objection is not only to the use of contraceptives but also being required to actively participate in a scheme to provide such services." *Roman Catholic Archdiocese of New York*, 2013 WL 6579764, at \*14. The accommodation requires Appellants themselves to sign what is, "in effect, a permission slip." *Southern Nazarene Univ.*, 2013 WL 6804265, at \* 8.

As another court in this Circuit explained, the claim that Appellants' objection to signing the form is "legally flawed and misguided because their participation would not actually facilitate access to contraceptive coverage" is "simply another variation of a proposition rejected by [this Court of Appeals] in *Hobby Lobby*." *Reaching Souls*, 2013 WL 6804259, at \*7. The question is "not whether the reasonable observer would consider the plaintiffs complicit in an immoral act, but rather how the plaintiffs themselves measure their degree of complicity.'" *Id.*, quoting *Hobby Lobby*, 723 F.3d at 1137 (rejecting government's argument as "fundamentally flawed because it advances an understanding of 'substantial burden' that presumes 'substantial' requires an inquiry into the theological merit of the belief in question rather than the *intensity of the coercion* applied by the government to act contrary to those beliefs."). And because Appellants view completing the self-certification itself as problematic complicity with the government's scheme, "regardless of the effect of plaintiffs' TPAs, the regulations still require plaintiffs to take actions they believe are contrary to their religion." *Roman*

*Catholic Archdiocese of New York*, 2013 WL 6579764, at *7; *E. Tex. Baptist Univ.*, No. 12-cv-3009, Dkt. 133 at 36 ("The plaintiffs have demonstrated that the mandate and accommodation will compel them to engage in an affirmative act and that they find this act — their own act — to be religiously offensive. That act is completing and providing to their issuer or TPA the self-certification forms.").

In sum, other courts have appropriately recognized that the government's imposition of severe pressure on Appellants to comply notwithstanding their religious objection to participation is a substantial burden on their exercise of religion. *See Southern Nazarene Univ.*, 2013 WL 6804265, at * 9 ("The government has put these institutions to a choice of either acquiescing in a government enforced betrayal of sincerely held religious beliefs, or incurring potentially ruinous financial penalties, or electing other equally ruinous courses of action. That is the burden, and it is substantial.").

For these reasons, Appellants' are likely to succeed in demonstrating that the Mandate violates RFRA, and the lower court's denial of preliminary relief should be reversed.

## II.    THE REMAINING PRELIMINARY INJUNCTION FACTORS

*Irreparable Harm.* A potential violation of Appellants' rights under RFRA and the First Amendment constitutes irreparable harm. *See Hobby Lobby*, 723 F.3d at 1146; *Armstrong v. Sebelius*, 2013 WL 5213640, at *3 (D. Colo. 2013). Without relief, that harm will occur in just four days.

*The Balance of Harms.* The Tenth Circuit has recognized the considerable importance of an entity's religious liberty interests, the substantial burden that the

Mandate places on those interests, and that the Departments' interest in enforcing the Mandate in this context is not compelling. *See Hobby Lobby*, 723 F.3d at 1141, 43-44, 45-46. Thus, it has upheld determinations that the balance of harms favors religious claimants. *See Newland v. Sebelius,* 2013 WL 5481997, at *3 (10th Cir. 2013). Granting preliminary injunctive relief will merely preserve the status quo and extend to Appellants what the Departments have already categorically given numerous other employers, *Newland v. Sebelius,* 881 F. Supp. 2d 1287, 1295 (D. Colo. 2012), and have acquiesced to in many related cases. *See*, *e.g.*, Order, *Tyndale House Publishers v. Sebelius*, No. 13-5018 (D.C. Cir. May 3, 2013); Order, *Bick Holdings Inc. v. Sebelius*, No. 4:13-cv-00462 (E.D. Mo. April 1, 2013). Further, the Departments' new litigation position makes this factor particularly easy: the Departments assert that forcing the Appellants to sign and deliver the form would have no effect of advancing the government's objectives.

*Public Interest.* As courts have recognized when granting injunctions against the Mandate for similar religious objectors, "there is a strong public interest in the free exercise of religion even where that interest may conflict with" another statutory scheme. *Newland,* 881 F. Supp. 2d at 1295 (quoting *O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 1010 (10th Cir. 2004) (en banc), *aff'd Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418 (2006)). Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights" which are protected by RFRA. *Hobby Lobby*, 723 F.3d at 1147. And, again, the government's belated non-enforceability admission means that, even if the public *did*

have an interest in forcing Appellants to participate in the provision of contraceptive services, that interest is not implicated here.

*Scope of relief.* This Court should enter an injunction protecting all non-exempt Catholic ministries that receive health benefits through the Trust. This case was filed as a class action on behalf of all non-exempt Trust participants, Dkt. 1, and the Departments did not object to a classwide injunction below. Dkt. 29 at 15 n.8 ("[D]efendants do not object to the scope of the resulting preliminary injunction including the named plaintiffs as well as any members of the class plaintiffs have proposed in their complaint.").[12]

## CONCLUSION

Appellants respectfully ask the Court to enter an injunction against Appellees during the pendency of this appeal enjoining them from enforcing or applying the substantive requirements imposed in 42 U.S.C. § 300gg-13(a)(4) and from assessing penalties, fines, or taking any other enforcement actions for noncompliance related thereto, including those found in 26 U.S.C. §§ 4980D, 4980H, and 29 U.S.C. §§ 1132, 1185d against Appellants, all non-exempt employer participants in the Trust, and their third party administrators as their conduct relates to the Trust.

Respectfully submitted this 28th day of December 2013,

/s/ *Mark Rienzi*

---

[12] *Kansas Health Care Assoc. v. Kansas Dept. of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1548 (10th Cir. 1994); *O Centro Espirita Beneficiente Unaio Do Vegetal v. Ashcroft*, No. CV 00-1647, Document 100 (D.N.M. Nov. 13, 2002), *aff'd*, *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973 (10th Cir. 2004), *aff'd*, *Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal*, 546 U.S. 418 (2006) (affirming injunction that benefits all members and participants).

Mark L. Rienzi
Daniel Blomberg
Adèle Auxier Keim
THE BECKET FUND FOR RELIGIOUS LIBERTY
3000 K Street, N.W., Suite 220
Washington, D.C. 20007
(202) 349-7209
mrienzi@becketfund.org

Kevin C. Walsh
Univ. of Richmond Law School
28 Westhampton Way
Richmond, VA
(804) 287-6018
kwalsh@richmond.edu

Carl C. Scherz
Seth Roberts
Locke Lord LLP
2200 ROSS AVENUE, SUITE 2200
Dallas, Texas  75201
(214) 740-8583
cscherz@lockelord.com

*Attorneys for Appellants*

**CERTIFICATE OF SERVICE**

I certify that on December 28, 2013, I caused the foregoing *Emergency Motion for Injunction Pending Appeal* to be served electronically via the Court's electronic filing system on the following parties who are registered in the system:

Michelle Renee Bennett
Email: michelle.bennett@usdoj.gov

All other case participants will be served via the Court's electronic filing system as well.

I have also caused counsel for Appellees Benjamin Berwick to be served via email.

  /s/ *Mark Rienzi*

Mark Rienzi
THE BECKET FUND FOR RELIGIOUS LIBERTY
3000 K Street, N.W., Suite 220
Washington, DC 20007
(202) 349-7209
*Attorney for Appellants*

22

## CERTIFICATE OF COMPLIANCE

Pursuant to this Court's guidelines on the use of the CM/ECF system, I hereby certify that:

(1) all required privacy redactions have been made;

(2) no hard copies are required to be filed;

(3) the ECF submission was scanned for viruses with the most recent version of Symantec Endpoint Protection (last updated December 28, 2013) and, according to the program, is free of viruses.

> /s/ *Mark Rienzi*
> Mark Rienzi
> THE BECKET FUND FOR RELIGIOUS LIBERTY
> 3000 K Street, N.W., Suite 220
> Washington, DC 20007
> (202) 349-7209

23

## 10TH CIR. R. 8.2(A) CERTIFICATION

The underlying order from which Appellants seek an emergency injunction pending appeal was filed on December 27, 2013, at 3:08 PM MST. Appellants immediately contacted the clerk for the district court and for the Tenth Circuit to begin pursuing an injunction pending appeal. Appellants also contacted counsel for the Appellees, who stated that Appellees were opposed to an injunction pending appeal. Appellants filed their notice of appeal at 4:19 PM MST, their docketing statement at 1:39 AM MST on December 28, 2013, and, later in the morning of the 28th, this motion.

Counsel for the Appellees, Benjamin Berwick, is available at 202-305-8573 (office), 617-899-0428 (for emergency use), and Benjamin.L.Berwick@usdoj.gov. His co-counsel are Michelle Bennett and Michael Pollack. Ms. Bennett is available at 202-305-8902 and Michelle.Bennett@usdoj.gov; Mr. Pollack is available at Michael.C.Pollack@usdoj.gov.

Counsel for the Appellants are available in the following ways:

Mark Rienzi:         202-507-0834 (cell), mrienzi@becketfund.org
Daniel Blomberg:     803-331-1665 (cell), dblomberg@becketfund.org
Adele Keim:          202-955-0095 (office), akeim@becketfund.org
Carl Scherz:         214-740-8583 (office), cscherz@lockelord.com
Seth Roberts:        214-740-8583 (office), sroberts@lockelord.com
Kevin Walsh:         804-287-6018 (office), kwalsh@richmond.edu

 /s/ *Mark Rienzi*
Mark Rienzi
THE BECKET FUND FOR RELIGIOUS LIBERTY
3000 K Street, N.W., Suite 220
Washington, DC 20007
(202) 349-7209