# In the United States Court of Appeals for the Tenth Circuit

LITTLE SISTERS OF THE POOR HOME FOR THE AGED, DENVER, COLORADO, a Colorado non-profit corporation, LITTLE SISTERS OF THE POOR, BALTIMORE, INC., a Maryland non-profit corporation, by themselves and on behalf of all others similarly situated, CHRISTIAN BROTHERS SERVICES, an Illinois non-profit corporation, and CHRISTIAN BROTHERS EMPLOYEE BENEFIT TRUST,

*Petitioners,*

v.

KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, THOMAS PEREZ, Secretary of the United States Department of Labor, UNITED STATES DEPARTMENT OF LABOR, JACOB J. LEW, Secretary of the United States Department of the Treasury, and UNITED STATES DEPARTMENT OF THE TREASURY,

*Respondents.*

**On Appeal from the United States District Court for the District of Colorado**
**Judge William J. Martinez**
**Civil Action No. 1:13-cv-02611-WJM-BNB**

## PETITION FOR HEARING EN BANC

Mark L. Rienzi
Daniel Blomberg
Adèle Auxier Keim
THE BECKET FUND FOR RELIGIOUS LIBERTY
3000 K Street, N.W., Suite 220
Washington, D.C. 20007
(202) 349-7209

Kevin C. Walsh
Univ. of Richmond Law School
28 Westhampton Way
Richmond, VA
(804) 287-6018

Carl C. Scherz
Seth Roberts
LOCKE LORD LLP
2200 ROSS AVENUE, SUITE 2200
Dallas, Texas 75201
(214) 740-8583

*Attorneys for Petitioners*

## RULE 35(B) STATEMENT

*En banc* hearing is warranted because this appeal involves a question of exceptional importance. Petitioners are Catholic non-profit organizations and their Catholic health benefit plan, all of whom, as a matter of religious practice, exclude contraceptives and sterilization from their employee health plans. This appeal presents the question of whether the government can use severe fines to force Petitioners to abandon that religious exercise—either by providing the required coverage or authorizing someone else to do so on their behalf—without violating the Religious Freedom Restoration Act ("RFRA") and the First Amendment.

This issue is currently being considered by eight different circuits, is presented in three separate appeals pending in this Circuit, and has already resulted in an order from the U.S. Supreme Court overruling the motions panel in this case.

*En banc* hearing in the first instance will (1) conserve judicial resources, (2) secure uniformity of this Court's decisions, (3) help ensure this Circuit remains in step with the overwhelming majority of courts that have correctly granted injunctive relief to other religious organizations in nineteen out of twenty cases, and (4) ensure that the parties and other courts receive the benefit of this Court's plenary consideration of this exceedingly important issue.

 /s/ *Mark Rienzi*
Mark Rienzi
*Attorney for Petitioners*

# TABLE OF CONTENTS

RULE 35(B) STATEMENT ................................................................................i

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION ...........................................................................................1

BACKGROUND ............................................................................................2

ARGUMENT ..................................................................................................8

I.  This appeal raises a question of exceptional and nationwide
    importance concerning fundamental civil rights. ...........................................8

    A. The issue raised here is the subject of a rapidly developing
    circuit split and is already presented by three appeals
    before this Court. .....................................................................................8

    B. Initial en banc hearing will allow this Circuit to protect
    fundamental rights and avoid conflicts with Circuit and
    Supreme Court precedent. ......................................................................11

    C. An en banc hearing will preserve judicial resources and
    prevent the confusion that prompted the Seventh Circuit's
    erroneous ruling. .....................................................................................14

CONCLUSION ..............................................................................................15

CERTIFICATE OF SERVICE .......................................................................17

CERTIFICATES OF COMPLIANCE ............................................................18

# TABLE OF AUTHORITIES

**Cases**

*Archdiocese of New York v. Sebelius,*
No. 12-cv-2542, 2013 WL 6579764 (E.D.N.Y. Dec. 16, 2013) ........................9

*Armstrong v. Sebelius,*
531 F. App'x 938 (10th Cir. 2013) ....................................................................2

*Ave Maria Found. v. Sebelius,*
No. 2:13-cv-15198, 2014 WL 117425 (E.D. Mich. Jan. 13, 2014)....................9

*Ave Maria Found. v. Sebelius,*
No. 14-1310 (6th Cir.) ......................................................................................10

*Catholic Diocese of Beaumont v. Sebelius,*
No. 1:13-cv-709, 2014 WL 31652 (E.D. Tex. Jan. 2, 2014)...............................9

*Catholic Diocese of Beaumont v. Sebelius,*
No. 14-40212 (5th Cir.) .....................................................................................10

*Catholic Diocese of Nashville v. Sebelius,*
No. 13-6640 (6th Cir.) ...................................................................................9, 10

*Conestoga Wood Specialties v. Sebelius,*
No. 13-356 (U.S.) ................................................................................................9

*Diocese of Fort Wayne-S. Bend, Inc. v. Sebelius,*
No. 1:12-cv-159, 2013 WL 6843012  (N.D. Ind. Dec. 27, 2013) .......................9

*Diocese of Fort Wayne-South Bend v. Sebelius,*
No. 14-1431 (7th Cir.) .......................................................................................10

*E. Tex. Baptist Univ. v. Sebelius,*
No. 12-cv-3009, 2013 WL 6838893 (S.D. Tex. Dec. 27, 2013) .....................7, 9

*E. Texas Baptist Univ. v. Sebelius,*
No. 14-20112 (5th Cir.) .....................................................................................10

*Geneva College v. Sebelius,*
No. 2:12-cv-00207, 2013 WL 6835094 (W.D. Pa. Dec. 23, 2013).....................9

*Geneva College v. Sebelius*,
  Nos. 13-2814, 13-3536, 14-1374 (3d Cir.) ........................................................10

*Grace Schools v. Sebelius,*
  No. 3:12-CV-459, 2013 WL 6842772 (N.D. Ind. Dec. 27, 2013) ......................9

*Grace Schools v. Sebelius*,
  No. 14-1430 (7th Cir.) ........................................................................................10

*Hobby Lobby Stores, Inc. v. Sebelius,*
  723 F.3d 1114 (10th Cir. 2013) ................................................................. passim

*Legatus v. Sebelius,*
  No. 2:12-cv-12061, 2013 WL 6768607 (E.D. Mich. Dec. 20, 2013) ...............10

*Legatus v. Sebelius*,
  No. 14-1183 (6th Cir.) ........................................................................................10

*Little Sisters of the Poor v. Sebelius*,
  134 S. Ct. 1022 (2014)........................................................................................9

*Mich. Catholic Conf. v. Sebelius*,
  Nos. 13-2723 (6th Cir.)...................................................................................9, 10

*Newland v. Sebelius*,
  542 F. App'x 706 (10th Cir. 2013) ....................................................................2

*Notre Dame v. Sebelius*,
  __F.3d__, 2014 WL 687134 (7th Cir. Feb. 21, 2014)................................. 10, 15

*Persico v. Sebelius,*
  No. 2:13-cv-00303, 2013 WL 6118696 (W.D. Pa. Nov. 21, 2013) ..................10

*Persico v. Sebelius*,
  No. 14-1376 (3d Cir.) ........................................................................................10

*Priests for Life v. HHS*,
  Nos. 13-5368 (D.C. Cir.) .................................................................................9, 10

*Reaching Souls Int'l v. Sebelius*,
  No. 13-cv-1092, 2013 WL 6804259 (W.D. Okla. Dec. 20, 2013)..................7, 9

*Reaching Souls Int'l v. Sebelius*,
No. 14-6028 (10th Cir.) ...................................................................2, 10

*Roman Catholic Archbishop of Wash. v. Sebelius*,
No. 13-cv-1441 (D.D.C. 2013) ..........................................................15

*Roman Catholic Archbishop of Wash. v. Sebelius,*
Nos. 13-5371 (D.C. Cir.) .................................................................9, 10

*Roman Catholic Archdiocese of New York v. Sebelius*,
No. 12-cv-2542, 2013 WL 6579764 (E.D.N.Y. Dec. 16, 2013) ..........................7

*Roman Catholic Archdiocese of New York v. Sebelius*,
No. 14-427 (2d Cir.) .......................................................................10

*Roman Catholic Diocese of Fort Worth v. Sebelius*,
No. 4:12-cv-00314, 2013 WL 6843012 (N.D. Tex. Dec. 31, 2013) ...................9

*Roman Catholic Diocese of Fort Worth v. Sebelius*,
No. 14-10241 (5th Cir.) ...................................................................10

*S. Nazarene Univ. v. Sebelius,*
No. 5:13-cv-1015, 2013 WL 6804265 (W.D. Okla. Dec. 23, 2013)...................9

*S. Nazarene Univ. v. Sebelius*,
No. 14-6026 (10th Cir.) .................................................................2, 10

*Sebelius v. Hobby Lobby*,
No. 13-354 (U.S.) ...........................................................................9

*Sharpe Holdings, Inc. v. HHS*,
No. 2:12-cv-92, 2013 WL 6858588 (E.D. Mo. Dec. 30, 2013) ..........................9

*Sharpe Holdings, Inc. v. HHS*,
No. 14-1507 (8th Cir.) ...................................................................10

*Thomas v. Review Bd.,*
450 U.S. 707 (1981)................................................................... 13, 14

*Yellowbear v. Lampert*,
741 F.3d 48 (10th Cir. 2014) .................................................... 13, 14

*Zubik v. Sebelius*,
No. 2:13-cv-01459, 2013 WL 6118696 (W.D. Pa. Nov. 21, 2013) ...................10

*Zubik v. Sebelius*,
No. 14-1377 (3d Cir.) .................................................................................10

**Statutes**

26 U.S.C. § 414 ...........................................................................................3

26 U.S.C. § 4980D .......................................................................................4

26 U.S.C. § 4980H .......................................................................................4

29 U.S.C. § 1002 ..........................................................................................3

29 U.S.C. § 1003 ..........................................................................................3

42 U.S.C. § 18011 ........................................................................................5

42 U.S.C. § 300gg-13....................................................................................4

**Other Authorities**

*Catechism of the Catholic Church* ...............................................................3

*Compendium of the Social Doctrine of the Church* ......................................3

*Directives for Catholic Health Care Services* ..............................................3

*Evangelium Vitae* .......................................................................................3

**Rules**

10th Cir. R. 35.1 ........................................................................................11

Fed. R. App. P. 35 ............................................................................. 8, 10, 14

**Regulations**

26 C.F.R. 1.6033-2 .......................................................................................5

26 C.F.R. 54.9815–2713A ..........................................................................5, 6

29 C.F.R. 2590.715–2713A ........................................................................5, 6

45 C.F.R. 147.131 ...................................................................5, 6

45 C.F.R. 156.50 .........................................................................6

78 Fed. Reg. 39870 (July 2, 2013) ....................................5, 12

## INTRODUCTION

This case presents a question of exceptional importance: whether the government can punish religious non-profits because their religious beliefs prevent them from participating in the government's contraceptive mandate (the "Mandate"). This question of exceptional importance has resulted in exceptional litigation, which has already causing a split in the circuits. Motions panels from the Sixth and D.C. Circuits have granted injunctions pending appeal, the Supreme Court has overturned a motions panel of this Court to grant an injunction pending appeal under the All Writs Act, while a merits panel of the Seventh Circuit has affirmed the denial of a preliminary injunction. In total, there are twenty pending appeals that involve non-profit religious organization challenges to the Mandate.

This case is the first of three appeals pending in this Court concerning the government's application of its Mandate to religious non-profits. Rather than risk (a) conflicting results from different panels, or (b) the inevitable confusion of issues that would result from lumping several different cases together before a single panel (which then might be reheard *en banc* anyway), Petitioners respectfully suggest that this Court grant initial *en banc* consideration to allow the full Court to consider these exceptionally important matters once and resolve them once, vastly reducing the workload for future panels considering the later-filed appeals. This approach worked for the for-profit Mandate cases and makes sense

here. *See*, *e.g.*, *Hobby Lobby Stores, Inc. v. Sebelius,* 723 F.3d 1114 (10th Cir. 2013) (en banc) cert. granted, 134 S. Ct. 678 (2013) (addressing RFRA's impact on the Mandate in the context of for-profit businesses); *Armstrong v. Sebelius*, 531 F. App'x 938 (10th Cir. 2013) (following *Hobby Lobby*); *Newland v. Sebelius*, 542 F. App'x 706 (10th Cir. 2013) (same).[1]

## BACKGROUND

The Little Sisters of the Poor Home for the Aged, Denver, Colorado, and Little Sisters of the Poor, Baltimore (collectively the "Little Sisters"), are part of an international order of Catholic nuns whose faith inspires them to spend their lives serving the sick and elderly poor. JA148a. Each Little Sister takes a vow of obedience to God, and a vow of hospitality "through which she promises to care for the aged as if they were Christ himself." JA149a, 151a. The Little Sisters strive to treat each elderly "individual with the dignity they are due as a person loved and created by God," and also to "convey a public witness of respect for life, in the hope that we can help build a Culture of Life in our society." JA152a.

The religious faith that inspires the Little Sisters to care for the elderly poor also

---

[1] The government takes this position on the petition: "The government does not believe that this case meets the criteria for initial en banc but defers to the judgment of the Court regarding whether to convene en banc. For the reasons stated in the government's March 6 Motion to Consolidate In Part, however, the government respectfully submits that regardless of whether the Court hears the *Little Sisters* appeal initially en banc, the Court should hear that appeal alongside *Southern Nazarene University* v. *Sebelius*, No. 14-6026, and *Reaching Souls Intl.* v. *Sebelius*, No. 14-6028."

prevents them from participating in any program to encourage, effectuate, or subsidize the use of sterilization, contraceptives, or abortion-inducing drugs and devices. JA153a-56a, 166a-68a (citing *Catechism of the Catholic Church* §§ 2270, 2271, 2274, 2284, 2286, & 2370; *Compendium of the Social Doctrine of the Church* § 234; *Evangelium Vitae* § 91; and *Directives for Catholic Health Care Services* Nos. 3, 45, 52-53, 67-72). Following these Catholic teachings, the Little Sisters exclude coverage of sterilization, contraceptives, and abortion-inducing drugs and devices from their benefits plans. JA151a, 156a, 172a.

The Little Sisters do not engage in this religious exercise alone. Rather, they are joined as appellants by the Catholic health benefits provider with whom they work, Christian Brothers Employee Benefits Trust (the "Trust"),[2] and the Catholic organization that administers the Trust, Christian Brothers Services.[3] These Petitioners come together, along with hundreds of other Catholic non-profits, to jointly provide benefits consistent with their shared Catholic faith.[4]

---

[2] By federal law, the Trust is a self-insured "church plan." A "church plan" is a benefit plan established by a church or a convention or association of churches. The plan covers the employees of those churches, and organizations controlled by or associated with the churches. *See* 29 U.S.C. § 1002(33); 26 U.S.C. § 414(e). Unless they choose otherwise, church plans are exempt from regulation under ERISA. 29 U.S.C. § 1003(b)(2).

[3] The Trust also uses Express Scripts, Inc., a large public company which provides pharmaceutical claim administrative services under the Trust. JA495a.

[4] Although the class of these employers has not yet been certified, the government agreed that any preliminary relief entered for the named plaintiffs can extend to the class. Gov't Mot. for Ext'n, Dkt. 35 at 2-3; JA296a.

This case concerns a federal mandate that would force the Little Sisters to give up this religious exercise or face crippling daily and annual penalties. In particular, the Affordable Care Act mandates that any "group health plan" must provide coverage for certain "preventive care" without "any cost sharing." 42 U.S.C. § 300gg-13(a) (the "Mandate"). Respondent Department of Health and Human Services defined "preventative care" to include all FDA-approved contraceptive methods, sterilization procedures, and patient education and counseling, including abortifacient "emergency contraception" such as Plan B (the "morning-after" pill) and ella (the "week-after" pill). JA79a-80a, 91a-92a. The FDA's Birth Control Guide notes that these drugs and devices may work by preventing "attachment (implantation)" of a fertilized egg in the uterus. JA91a-92a.

Failure to provide this coverage triggers a variety of penalties, including crippling daily and annual penalties. *See, e.g.,* 26 U.S.C. § 4980D(b)(1) ("$100 for each day in the noncompliance period with respect to each individual to whom such failure relates" if coverage is provided that does not comply with the Mandate); 26 U.S.C. § 4980H(c)(1) ($2000 annually for each full-time employee if no coverage is provided beginning in 2015 (2016 for certain employers with 50 to 99 average full-time employees)); *see also Hobby Lobby*, 723 F.3d at 1125.

It is undisputed that the Little Sisters do not qualify for any of the available exemptions to the Mandate. For example, plans covering tens of millions of people

are "grandfathered" and therefore exempt from the Mandate—*see* 42 U.S.C. § 18011 (2010); JA120a; *Hobby Lobby*, 723 F.3d at 1124—but the Little Sisters' plan is not. Likewise, the government has exempted thousands of organizations as "religious employers," but the Little Sisters do not meet that definition, essentially because they own and operate their homes themselves, rather than ceding ownership and control to their local bishops. 78 Fed. Reg. 39870, 39874 (July 2, 2013); 45 C.F.R. 147.131(a); *see also* 26 C.F.R. 1.6033-2(h).

Because the Little Sisters are non-exempt, they must comply with the Mandate, either by directly providing the coverage in their plan, or by executing and delivering a federal form EBSA Form 700 that authorizes, directs, and incentivizes others to do so. *See* 26 C.F.R. 54.9815–2713A; 29 C.F.R. 2590.715–2713A. The government has acknowledged that EBSA Form 700:

(1)  is part of its effort to ensure that employees "will still benefit from separate payments for contraceptive services without cost sharing or other charge," despite their employers' religious objections, 78 Fed. Reg. at 39874;

(2)  designates a third party administrator (TPA) to be the "plan administrator and claims administrator solely for the purpose of providing payments for contraceptive services for participants and beneficiaries," *id.* at 39789; 26 C.F.R. 54.9815-2713A;

(3)  triggers a TPA's legal obligation to make "separate payments for contraceptive services directly for plan participants and beneficiaries," 78 Fed. Reg. 39875-76; 45 C.F.R. 147.131(c)(2)(i)(B); 26 C.F.R. 54.9815-2713A(b)(2);

(4)  "ensures that there is a party with legal authority" to make payments for contraceptive services to beneficiaries "so long as [they remain] enrolled in

[the] group health plan," 26 C.F.R. 54.9815-2713A(d); 29 C.F.R. 2590.715-2713A(d); *see also* 45 C.F.R. 147.131(c)(2)(i)(B);

(5) directs the TPA to its "obligations" to provide contraceptive services, JA357a-58a;

(6) becomes "an instrument under which the plan is operated," *id.*;

(7) forbids the Little Sisters from even "directly or indirectly" talking to the TPA to instruct the TPA not to provide the services in connection with the Little Sisters plan, 26 C.F.R. 54.9815–2713A(b)(iii), JA677a, 679a-80a; *and*

(8) triggers a TPA's eligibility for government payments that will both cover the TPA's costs and include at least 10% more for the TPA's margin and overhead. 45 C.F.R. 156.50; JA672a-73a, 677a.

The Little Sisters have a sincere and undisputed religious belief that they can neither directly provide the coverage at issue nor execute and deliver EBSA Form 700. *See* JA699a, 702a.[5]

Facing hundreds of millions of dollars in penalties and potential loss of business starting January 1, 2014, Petitioners sought preliminary relief under RFRA and the First Amendment's Speech and Religion Clauses.[6] JA 159a, JA173a, 175a. They alleged that the Mandate substantially burdened their sincere religious practice of not covering contraceptives in their health plan or authorizing others to do so, that

---

[5] The Little Sisters adhere to the well-known Catholic teaching that Catholics may never "encourage" the use of "contraception, sterilization, and abortion," JA154a, whether by directly providing these services themselves, instructing someone else to provide them, or participating in a system designed to deliver them. JA154a-58a, 166a-70a.

[6] Petitioners also challenged the Mandate under the Fifth Amendment and the Administrative Procedures Act, JA11a, but those claims were not raised in Petitioner's preliminary injunction motion and are not before this Court.

it unconstitutionally discriminated among religious organizations, and that the Mandate—particularly the EBSA Form 700-dependent accommodation system—required unconstitutional compelled speech. JA128a.

On October 31, 2013, the government asserted—for the first time in any case, anywhere—that it could not "enforce" the accommodation scheme's requirement that TPAs serving an ERISA-exempt church plan provide the objectionable services, ostensibly because the government's sole authority for enforcing the Mandate came from ERISA. Gov't Opp. to Mot. to Expedite, Dkt. 19 at 2 n.1, *Reaching Souls Int'l v. Sebelius*, No. 13-cv-1092 (W.D. Okla.).[7] A week later, the government made the same assertion in the Little Sisters' case. JA288a. The government argued that its lack of enforcement authority deprived the Little Sisters of standing.[8]

On December 27th, the district court denied Petitioners' motion for a preliminary injunction, reasoning that the Little Sisters' religious objection to signing and delivering EBSA Form 700 was invalid because they "read[] too much into the language of the Form." JA710a. A motions panel of this Court denied

---

[7] This was a new position. Before Petitioners filed their lawsuit, the government asserted that it *could* make its scheme work against church plan participants. *See* Def's Mot. to Dismiss, Dkt. 79, *E. Tex. Baptist Univ. v. Sebelius*, No. 4:12-cv-03009 (S.D. Tex. Sept. 20, 2013). As another court observed, "After almost 18 months of litigation, [Defendants] now effectively concede that the regulatory tale told by the Government was a *non-sequitur.*" *Roman Catholic Archdiocese of New York v. Sebelius*, No. 12-cv-2542, 2013 WL 6579764, *6 (E.D.N.Y. Dec. 16, 2013).

[8] The government's standing argument has been rejected by every court to consider it.

Petitioners' motion for an injunction pending appeal without significant analysis on December 31, 2013. Justice Sonia Sotomayor issued a temporary injunction later that night and on January 24, 2014, the full Supreme Court ruled that:

> If the employer applicants inform the Secretary of Health and Human Services in writing that they are non-profit organizations that hold themselves out as religious and have religious objections to providing coverage for contraceptive services, the respondents are enjoined from enforcing against the applicants the challenged provisions of the Patient Protection and Affordable Care Act and related regulations pending final disposition of the appeal by the United States Court of Appeals for the Tenth Circuit. To meet the condition for injunction pending appeal, [Petitioners] need not use the form prescribed by the Government and need not send copies to third-party administrators. The Court issues this order based on all of the circumstances of the case, and this order should not be construed as an expression of the Court's views on the merits.

JA725a. Petitioners provided the required notice to the Secretary and are currently protected by the Supreme Court's injunction pending the outcome of this appeal.

## ARGUMENT

### I. This appeal raises a question of exceptional and nationwide importance concerning fundamental civil rights.

#### A. The issue raised here is the subject of a rapidly developing circuit split and is already presented by three appeals before this Court.

The central question raised in this appeal—whether the federal government can use the threat of massive fines to force the Little Sisters to participate in a system designed to provide contraceptives to their employees—is a matter of exceptional importance meriting *en banc* consideration. *See* Fed. R. App. P. 35(a)(2) (*en banc* hearing may be ordered where "the proceeding involves a question of exceptional

importance"). The Supreme Court is presently considering whether the government can apply the Mandate to for-profit businesses with religious objections. *Sebelius v. Hobby Lobby*, No. 13-354; *Conestoga Wood Specialties v. Sebelius*, No. 13-356. And the Supreme Court has already recognized the exceptional nature of this case by ordering the government to exempt the Little Sisters from the Mandate while this appeal is pending, reversing a motions panel decision of this Court. JA725a.

The Supreme Court is not alone. In the past months, federal courts have decided twenty religious liberty challenges to the Mandate brought by non-profit religious organizations. In nineteen of those cases, courts have granted injunctions.[9] As of

---

[9] **Church Plan Cases:** *Little Sisters of the Poor v. Sebelius*, 134 S. Ct. 1022 (2014) (injunction pending appeal); *Roman Catholic Archbishop of Wash. v. Sebelius*, No. 13-5371 (D.C. Cir. Dec. 31, 2013) (same); *Mich. Catholic Conf. v. Sebelius*, No. 13-2723 (6th Cir. Dec. 31, 2013) (same); *Catholic Diocese of Beaumont v. Sebelius*, No. 1:13-cv-709, 2014 WL 31652 (E.D. Tex. Jan. 2, 2014) (permanent injunction in case involving two participants in the Christian Brothers' plan); *E. Tex. Baptist Univ. v. Sebelius*, No. 12-cv-3009, 2013 WL 6838893 (S.D. Tex. Dec. 27, 2013) (permanent injunction); *S. Nazarene Univ. v. Sebelius,* No. 5:13-cv-1015, 2013 WL 6804265 (W.D. Okla. Dec. 23, 2013) (preliminary injunction); *Reaching Souls Int'l v. Sebelius,* No. 5:13-cv-1092-D, 2013 WL 6804259 (W.D. Okla. Dec. 20, 2013) (preliminary injunction in class action involving church plan); *Archdiocese of New York v. Sebelius*, No. 12-cv-2542, 2013 WL 6579764 (E.D.N.Y. Dec. 16, 2013) (preliminary injunction).

**Other Non-Profit Cases:** *Priests for Life v. HHS*, No. 13-5368 (D.C. Cir. Dec. 31, 2013) (injunction pending appeal); *Catholic Diocese of Nashville v. Sebelius*, No. 13-6640 (6th Cir. Dec. 31, 2013) (same); *Ave Maria Found. v. Sebelius*, No. 2:13-cv-15198 2014 WL 117425 (E.D. Mich. Jan. 13, 2014) (preliminary injunction); *Roman Catholic Diocese of Fort Worth v. Sebelius*, No. 4:12-cv-00314 (N.D. Tex. Dec. 31, 2013) (same); *Sharpe Holdings, Inc. v. HHS*, No. 2:12-cv-92, 2013 WL 6858588 (E.D. Mo. Dec. 30, 2013) (same); *Grace Schools v. Sebelius,* No. 3:12-CV-459, 2013 WL 6842772 (N.D. Ind. Dec. 27, 2013) (same); *Diocese of Fort Wayne-S. Bend, Inc. v. Sebelius*, No. 1:12-cv-159, 2013 WL 6843012  (N.D. Ind. Dec. 27, 2013) (same); *Geneva College v. Sebelius,* No. 2:12-cv-00207, 2013 WL 6835094 (W.D. Pa. Dec. 23, 2013) (same);

this week, there are twenty appeals pending in eight circuits—including three cases before this Court.[10] These cases are moving quickly: the Seventh Circuit ruled the same week that briefing closed in the Sixth Circuit cases,[11] and in the D.C. Circuit, briefing will close in mid-April.[12] The rapid development of conflicting judicial opinions on the same issue during nationwide litigation underscores the exceptional importance of this appeal. *Cf.* Fed. R. App. P. 35(b)(1)(B) (issue exceptionally important "if it involves an issue" on which the decision raised for *en*

---

*Legatus v. Sebelius,* No. 2:12-cv-12061, 2013 WL 6768607 (E.D. Mich. Dec. 20, 2013) (same); *Persico v. Sebelius*, No. 2:13-cv-00303, 2013 WL 6118696 (W.D. Pa. Nov. 21, 2013) (same); *Zubik v. Sebelius*, No. 2:13-cv-01459, 2013 WL 6118696 (W.D. Pa. Nov. 21, 2013) (same). *But see Notre Dame v. Sebelius*, __F.3d__, 2014 WL 687134 (7th Cir. Feb. 21, 2014) (denying injunction).

[10] **10th Circuit:** *Reaching Souls Int'l v. Sebelius*, No. 14-6028 (10th Cir.); *S. Nazarene Univ. v. Sebelius*, No. 14-6026 (10th Cir.).
**2nd Circuit:** *Roman Catholic Archdiocese of New York v. Sebelius*, No. 14-427 (2d Cir.).
**3rd Circuit:** *Persico v. Sebelius*, No. 14-1376 (3d Cir.); *Zubik v. Sebelius*, No. 14-1377 (3d Cir.); *Geneva College v. Sebelius*, Nos. 13-2814, 13-3536, 14-1374 (3d Cir.).
**5th Circuit:** *E. Texas Baptist Univ. v. Sebelius*, No. 14-20112 (5th Cir.); *Roman Catholic Diocese of Fort Worth v. Sebelius*, No. 14-10241 (5th Cir.); *Catholic Diocese of Beaumont v. Sebelius*, No. 14-40212 (5th Cir.).
**6th Circuit:** *Mich. Catholic Conf. v. Sebelius*, No. 13-2723 (6th Cir.), *Catholic Diocese of Nashville v. Sebelius*, No. 13-6640 (6th Cir.), *Legatus v. Sebelius*, No. 14-1183 (6th Cir.) (consolidated); *see also Ave Maria Found. v. Sebelius*, No. 14-1310 (6th Cir.).
**7th Circuit:** *Notre Dame*, 2014 WL 687134; *Grace Schools v. Sebelius*, No. 14-1430 (7th Cir.); *Diocese of Fort Wayne-South Bend v. Sebelius*, No. 14-1431 (7th Cir.).
**8th Circuit:** *Sharpe Holdings, Inc. v. HHS*, No. 14-1507 (8th Cir.).
**D.C. Circuit:** *Roman Catholic Archbishop of Wash. v. Sebelius,* Nos. 13-5371, 14-5021 (D.C. Cir.); *Priests for Life v. HHS*, No. 13-5368 (D.C. Cir.) (consolidated).

[11] *Notre Dame*, 2014 WL 687134; Order, *Mich. Catholic Conf. v. Sebelius*, Nos. 13-2723, 13-6640 (6th Cir. Jan. 13, 2014) (granting joint motion to consolidate).

[12] Order, *Priests for Life v. HHS*, Nos. 13-5368, 13-5371, 14-5021 (D.C. Cir. Jan. 29, 2013).

*banc* review "conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue"). Judicial efficiency and consistency would therefore be served best by hearing this appeal *en banc* now. This would aid the parties and other courts, all of whom would have the benefit of this Circuit's plenary consideration of this critically important national issue.

**B.    Initial *en banc* hearing will allow this Circuit to protect fundamental rights and avoid conflicts with Circuit and Supreme Court precedent.**

At stake are First Amendment and RFRA religious liberty rights, and both the analysis of the court below and the motions panel of this Court are in direct conflict with Circuit and Supreme Court precedent protecting such rights. *See* 10th Cir. R. 35.1 (A) (*en banc* hearing "intended to focus the entire court on an issue of exceptional public importance or on a panel decision that conflicts with a decision of the United States Supreme Court or of this court"); *Hobby Lobby*, 723 F.3d at 1133 (RFRA is "intended" to protect First Amendment rights).

The district court below concluded that complying with the Mandate did not burden Petitioners' religious exercise in part because "Little Sisters' execution of the Form does not authorize any organization to deliver contraceptive coverage to Little Sisters' employees." JA711a. As a result, it dismissed Petitioners' religious beliefs about delivering or accepting the contraceptive coverage form as "pure conjecture, one that ignores the factual and legal realities of this case." JA713a.

The court was simply wrong about the "legal realities of this case"—ignoring the government's binding admissions that EBSA Form 700 *does* authorize church plan TPAs to provide the religiously-objectionable services, JA677a *and* Gov't Consolidat'n Mot. at 2-4; that the Form also designates, obligates, and incentivizes TPAs to provide those services, *see*, *e.g.*, JA677a; and that the Little Sisters are required to deliver the Form to *all* their TPAs, including ESI, which does not share their religious objections. JA495a.[13] More importantly, the court was wrong about the "factual . . . realities of this case": the undisputed fact is that the Little Sisters are religiously forbidden from signing EBSA Form 700.

The Little Sisters repeatedly pointed out that their faith forbids them from signing and delivering the Form to any TPA, including one that will not act on it. JA153a-56a, 160a, 166a-70a, 343a-45a, 352a-53a. Although the Little Sisters are entitled to their own religious views, in this instance their views are not idiosyncratic but reflect traditional Catholic moral teaching. The U.S. Conference of Catholic Bishops agrees that "the 'accommodation' would require Catholic organizations to violate their religious beliefs," and has filed an *amicus* brief in this case to say so. *Amicus* Br. of the U.S. Conference of Catholic Bishops at 2-3. And

---

[13] *Compare* JA712a (stating that the Little Sisters are "not required to deliver the Form to any organization other than [their] current third party administrator, Christian Brothers Services") *with* 78 Fed. Reg. at 39879 (stating that a religious organization seeking an accommodation must provide the Form "to *all* third party administrators with which it or its plan has contracted.") (emphasis added).

67 leading Catholic theologians and ethicists have explained that the Little Sisters' submission of EBSA Form 7-- with knowledge of the government's objectives could be reasonably viewed as morally "impermissible *regardless of whether the Government actually succeeds* in its objectives of promoting the use of contraceptives, abortifacients, and sterilization. *Amicus* Br. of 67 Catholic Theologians and Ethicists at 11-12 (emphasis in original).

Despite the Little Sisters' clear religious objections, the district court dismissed them as relying on "pure conjecture," JA713a, that "read[] too much into the . . . Form," JA710a. The motions panel upheld this result by similarly discounting the Little Sisters' objection to signing the Form. JA721a. It found that because the Little Sisters may avoid one violation of their religious beliefs (directly providing the objectionable drugs and devices) by violating their beliefs in another way (signing and delivering EBSA Form 700), no relief was warranted. *Id.*

These conclusions conflicts with Supreme Court and Tenth Circuit religious liberty precedent, which holds that "it isn't for judges to decide whether a claimant who seeks to pursue a particular religious exercise has 'correctly perceived the commands of [his] faith' or to become 'arbiters of scriptural interpretation.'" *Yellowbear v. Lampert*, 741 F.3d 48, 54-55 (10th Cir. 2014) (citing *Thomas v. Review Bd.,* 450 U.S. 707, 716 (1981)); *see also Hobby Lobby,* 723 F.3d at 1139 (citing *Thomas,* 450 U.S. at 714-15) ("[The plaintiff] drew a line, and it is not for

us to say that the line he drew was an unreasonable one."). An *en banc* hearing can protect the fundamental rights at issue here and correct the conflict with *Thomas*, *Yellowbear*, and *Hobby Lobby*.

### C. An *en banc* hearing will preserve judicial resources and prevent the confusion that prompted the Seventh Circuit's erroneous ruling.

If this appeal is heard under the normal panel process, it is virtually inevitable that this Court will be asked to re-hear one or all of the three pending appeals *en banc*—either because panel decisions conflict or because a panel decision conflicts with another circuit's decision. Fed. R. App. P. 35 (a)(1), (a)(2). Judicial efficiency and consistency would therefore best be served by hearing this appeal *en banc* now, and giving future panels the benefit of a plenary decision.

This course will serve the purposes of judicial efficiency more than consolidating the three existing appeals before a single panel, as the government has suggested. Gov't Consolidat'n. Mot. at 2. As in *Hobby Lobby*, initial e*n banc* review would provide definitive Tenth Circuit precedent for future courts to follow, greatly reducing judicial workload.

By contrast, consolidation would do more harm than good. The government's accommodation system is complicated and varies in different contexts. Under RFRA, the government must bear its burden of proving its imposition is necessary for the "particular claimant whose sincere exercise of religion is being substantially burdened." *Hobby Lobby*, 723 F.3d at 1126. As the government admits in its

consolidation motion, the other cases on appeal in this Circuit involve different religious objectors with different religious objections and different kinds of health care plans facing different factual scenarios. Most notably, the *Southern Nazarene* appeal raises several different types of health plans not at issue in this appeal, plans for which the government offers different accommodations and different defenses to the religious objections raised to those accommodations. These differences would make the required particularized analysis difficult to perform.

Further, combining various types of cases before one panel would risk leading a panel into the kind of mistakes that the Seventh Circuit recently made, where it conflated the different accommodation schemes and based its analysis on a view of the law the government has publicly rejected here and elsewhere.[14] Such confusion indicates *en banc* consideration of one case is the better mechanism for clear analysis of the relevant issues.

## CONCLUSION

For all the reasons stated above, Petitioners ask that this case be heard *en banc.*

---

[14] The Seventh Circuit based its opinion on the conclusion that "federal law" requires TPAs of self-insured plans to cover contraceptives, and that this requirement is *not* due to "the religious organization's signing and mailing the form." *Notre Dame*, 2014 WL 687134, at *7. The government has already repudiated the Seventh Circuit's view, in this case and others. *See* Gov't Consolidat'n. Mot. at 4 (noting that TPAs only take on an obligation to provide contraceptives "if the plaintiffs opt out of doing so"); *see also* Dkt. 54, Tr. of Hr'g at 13:16-22, *Roman Catholic Archbishop of Wash. v. Sebelius*, No. 13-1441 (D.D.C. Nov. 22, 2013) (admitting that TPA's obligation to provide the coverage "only arises … by virtue of the fact that they receive the self-certification form").

Respectfully submitted this 18th day of March 2014,

/s/ *Mark Rienzi*
Mark L. Rienzi
Daniel Blomberg
Adèle Auxier Keim
THE BECKET FUND FOR RELIGIOUS LIBERTY
3000 K Street, N.W., Suite 220
Washington, D.C. 20007
(202) 349-7209
mrienzi@becketfund.org

Kevin C. Walsh
Univ. of Richmond Law School
28 Westhampton Way
Richmond, VA
(804) 287-6018
kwalsh@richmond.edu

Carl C. Scherz
Seth Roberts
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8583
cscherz@lockelord.com

*Attorneys for Petitioners*

# CERTIFICATE OF SERVICE

I certify that on March 18, 2014, I caused the foregoing to be served electronically via the Court's electronic filing system on the following parties who are registered in the system:

Michelle Renee Bennett
Email: michelle.bennett@usdoj.gov

Bradley Philip Humphreys
Email: bradley.p.humphreys@usdoj.gov

Adam C. Jed
Email: adam.c.jed@usdoj.gov

Mark B. Stern
Email: mark.stern@usdoj.gov

All other case participants will be served via the Court's electronic filing system as well.

 /s/ *Mark Rienzi*                          
Mark Rienzi
THE BECKET FUND FOR RELIGIOUS LIBERTY
3000 K Street, N.W., Suite 220
Washington, DC 20007
(202) 349-7209
mrienzi@becketfund.org
*Attorney for Petitioners*

## CERTIFICATES OF COMPLIANCE

1. This brief complies with the page limitation of Fed. R. App. P. 35 because it does not exceed 15 pages, excluding material not counted under Fed. R. App. P. 32.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using **Microsoft Office Word 2013** in **Times New Roman 13- and 14-point font**.

3. Pursuant to this Court's guidelines on the use of the CM/ECF system, I hereby certify that:

   a. all required privacy redactions have been made;

   b. the hard copies that have been submitted to the Clerk's Office are *exact* copies of the ECF filing; and

   c. the ECF submission was scanned for viruses with the most recent version of Symantec Endpoint Protection (last updated March 18, 2014) and, according to the program, is free of viruses.

*/s/ Mark Rienzi*
Mark Rienzi
THE BECKET FUND FOR RELIGIOUS LIBERTY
3000 K Street, N.W., Suite 220
Washington, D.C. 20007
(202) 349-7213
mrienzi@becketfund.org
*Attorney for Petitioners*

Dated: March 18, 2014